### Etta Boyd, Appellant, v. Rufus D. Boyd, Appellee.

1. HUSBAND AND WIFE, § 213*—*when separation agreement becomes abrogated by resumption of marital relation.* A separation agreement between husband and wife, whereby the wife in consideration of a certain sum released her husband from any claim or right to maintenance or support, becomes abrogated and void in so far as it attempts to relieve the husband of the maintenance and support of wife and child where the parties thereafter fully resume the marital relation.

2. HUSBAND AND WIFE, § 211*—*what postnuptial contracts not favored by law.* Postnuptial contracts between husband and wife made in contemplation of the parties living separate and apart, or where the element of separation enters into them, or where the separation is an accomplished fact when the contract is made, and without it in all probability the contract would not have been made, are not looked upon with indulgence by the law.

3. CONTRACTS, § 142*—*validity of postnuptial contracts.* Postnuptial contracts between husband and wife adjusting their interest in the property of each other, not made in contemplation of living separate and apart, are not contrary to public policy and are valid when understandingly and voluntarily entered into.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed May 5, 1914.

FRED HAMILTON and WHITLEY & FITZGERALD, for appellant.

REDMON & HOGAN, for appellee.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellant filed her bill in the Circuit Court of Macon county against her husband, appellee, for separate maintenance. The bill alleges that appellant and appellee were married on the seventh day of March, 1903; one child, Lawrence Andrew Boyd, now about four years old, was born of said marriage; that appellee abandoned her without fault on her part about January 25, A. D. 1913; that appellee was guilty of many abuses to her so that her life was rendered miserable and unendurable, which conduct on his part continued until about the fifth day of January, 1911, at which time on account of his said conduct towards her she was compelled to leave him and remained away until about May 4, 1912, at which time he agreed and promised to refrain from all misconduct, and she, relying upon said promises, agreed to and did live and cohabit with him again as his wife; that after she had returned and resumed her marital relations with him he continued his acts of misconduct and abuse towards her and on the twenty-third day of January, A. D. 1913, sold all his personal property and on the twenty-fifth day of January he abandoned appellant and their child without cause. A temporary injunction was issued restraining appellee from removing, incumbering or disposing of his moneys and personal property. Subsequently an amendment to the bill was filed alleging that on the fifth day of January, 1911, appellant, at the instance and request of appellee, signed a certain agreement in writing which recites that in consideration of the sum of $1,020, appellant released appellee from any claim or right to maintenance and support which existed between them on account of the marriage relations; that appellant about the fourth day of May, 1912, returned from the State of Tennessee, where certain property she had purchased with said sum of money is situated, and

by agreement between herself and appellee they resumed their marital relations and continued to reside and cohabit with each other as husband and wife until the twenty-fifth day of January, A. D. 1913; that in consequence thereof the said agreement became null and void; that said agreement was to last only for a space of two years and that she stands ready and willing to deed back the land to appellee if, upon the hearing, that should seem just and equitable to the court; that she has no means but her own labor for her support and maintenance and has never received but $41.50 rent from said land in question. Answers were filed to the bill and the amended bill denying generally all allegations in regard to the misconduct of appellee, admitting that after said contract was made the parties resumed their marital relations, but denying that by reason thereof said contract became void.

When the cause came on for hearing and after the opening statements of counsel had been made, the court asked to have the contract produced, which was done. The court then decided that the contract was a complete bar to the relief prayed for in the amended bill, and over the objection of appellant refused to hear any evidence in support thereof, and dismissed the bill for want of equity. It was stipulated in open court that the parties to the contract had resumed marital relations after the contract had been executed as set forth in the amendment to the bill.

The only questions to be determined on this appeal are: First, did the resumption of the marital relations between the parties after said contract was executed render the contract void, or at least so much of it as released appellee from the maintenance and support of appellant and the child? Second, was the court warranted in dismissing the bill for want of equity without hearing any evidence offered in support thereof?

The bill and the amendment thereto are very inartificially drawn. The contract in question is not set out *in haec verba,* nor is the substance of the whole contract alleged, nor is it attached to or made a part of the amendment, and while the certificate of evidence shows that a contract was produced and examined by the court, it does not appear that it was introduced in evidence. But we think the bill as amended is sufficient to present the propositions above mentioned for determination.

Appellee contends that by virtue of chapter 68 of the Revised Statutes (J. & A. ¶ 6143), a wife has the right to contract with her husband in respect to all matters, including her property rights, and that all restrictions upon the power of husband and wife to contract with each other, excepting in so far as they are expressly retained by the statute, are removed; that the contract in question in this case was valid and was not abrogated or annulled by the resumption of the marital relations between the parties.

While it is unquestionably true that the statute has removed most of the restrictions upon the power of married women to make contracts, yet contracts, whether made by married women or other persons, are subservient to the doctrine of public policy of the State in which they are made. The public is interested in the adjustment of all questions growing out of marital relations involving divorce and separation. "The dissolution of the marriage tie is a subject in which not alone the parties to it are interested, but the public is interested also." *Trenchard v. Trenchard,* 245 Ill. 313. To the same effect, *Wilson v. Cook,* 256 Ill. 460.

Postnuptial contracts between husband and wife adjusting their interests in the property of each other, not made in contemplation of living separate and apart, when understandingly and voluntarily entered into are not contrary to public policy and are valid.

But such contracts made in contemplation of the parties living separate and apart from each other, or where the element of separation enters into them, or where the separation is an accomplished fact when the contract is made, and without it in all probability the contract would not have been made, are not looked upon with indulgence by the law, and while in some cases they will be enforced while the parties live in separation, yet in our opinion when the parties effect a reconciliation and resume their marital relations fully and completely, such contract is abrogated by the action of the parties themselves and ceases to have any force or effect, at least in so far as it attempts to relieve the husband from the maintenance and support of his wife and children. While this question does not seem to have been passed upon by the Supreme Court of this State, the proposition above announced has been approved in similar or analogous cases in other jurisdictions. *Shelthar v. Gregory*, 2 Wend. (N. Y.) 422; *Carson v. Murray*, 3 Paige (N. Y.) 483; *Zimmer v. Settle*, 124 N. Y. 37; *Wells v. Stout*, 9 Cal. 479; *Smith v. King*, 107 N. C. 273; *Archbell v. Archbell*, 158 N. C. 408; *Roberts v. Hardy*, 89 Mo. App. 86; *Gaster v. Gaster's Estate*, 90 Neb. 529; *Knapp v. Knapp*, 95 Mich. 474.

In 1 Bishop on Marriage, Divorce and Separation, sec. 1312, it is said: "Marriage is a public institution as well as private; the public is in effect a party to every marriage and to every divorce; and two persons who have united in matrimony cannot by their mutual consenting create a separation even from bed and board, for this is an act requiring also the sanction of the third party, the public. In circumstances pointed out by the laws, the courts will give this sanction in the form of a judicial decree. So that bargainings for a separation, made simply between the married parties, whether with or without the intervention of a trustee, are nugatory." And the same

author in discussing such a contract as is here involved, in the same work, sec. 1283, states the rule to be: "A renewal of cohabitation commonly terminates the agreement, since the usual consideration for it has ceased to operate." In Tyler on Infancy and Coverture, sec. 343, it is stated: "Reconciliation and recohabitation will avoid a deed of separation." The same doctrine is also announced in Tiffany on Persons and Domestic Relations, page 168.

The law does not favor the living apart of husband and wife, and under all circumstances encourages reconciliation. This principle is based upon sound public policy. Story in his work on Equity Jurisprudence, sec. 1427, states it as follows: "So earnest, indeed, are courts of equity to promote the reconciliation of parties living in a state of separation that they will on no occasion whatsoever enforce articles of separation by decreeing a continuance of the separation." And again in section 1428: "In the next place, even in cases of a deed for an immediate separation, if the parties come together again there is an end to it with respect to any future, as well as to the past separation."

Counsel for appellee cites the case of *Stokes v. Stokes*, 240 Ill. 330, as holding contrary to the doctrine we have herein approved. We do not so construe the decision in that case. In that case it appeared that there was an antenuptial contract made between the parties in which the rights of the wife were fixed in the property of the husband; that afterwards the husband and wife separated and the husband being old and feeble-minded a conservator was appointed for him, and that the wife and the conservator executed a subsequent contract, or postnuptial contract, which, while made when the parties were living apart, yet was made for the purpose of substituting that contract for the antenuptial contract. While the facts in that case show that during the last

illness of the husband he lived with the wife, yet at that time he was feeble-minded, and the conservator paid the wife a certain amount per week to nurse him and take care of him until he died, and there was no evidence to show that any actual marital relations were resumed between the parties, in fact there could not have been under said circumstances. There is nothing in the opinion in that case expressing any views contrary to those held herein.

We are of opinion, therefore, that if the marital relations were fully resumed between the parties in this suit after said contract was made, such action of the parties themselves abrogated said agreement and it became null and void in so far, at least, as it attempts to relieve the husband of the maintenance and support of his wife and child. Whether such marital relations were resumed was a question of fact to be determined from the evidence upon the hearing, and it follows that the Circuit Court erred in refusing to hear any testimony and in dismissing the bill for want of equity.

The decree will be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*