ANNA GILSEY, Appellant, v. MAX GILSEY, Respondent.

Kansas City Court of Appeals, January 28, 1918.

1. **REVERSAL WITH DIRECTIONS: Jurisdiction.** When a judgment is reversed and cause is remanded with specific directions, the trial court has no other jurisdiction than to follow the directions given.

2. **DIVORCE: Alimony: Separation and Settlement: Fraud: Tender.** Where husband and wife enter into a contract of settlement and separation, in which all money and property rights and obligations are adjusted in consideration of the husband paying her a certain sum of money, she cannot then bring an action for divorce and alimony and seek to repudiate the contract without tendering back the sum received by her under the contract. Such state of case does not come within the exception that a tender need not be made when the party demanding it already owes the other party more than the sum which is claimed should have been tendered.

Gilsey v. Gilsey.

3. **CASE IN EQUITY:** Tender. In an equity case where the party of-fers' to perform any and all orders, directions and judgments of the court, a tender need not be made, though in an action at law it would be necessary.

4. **DIVORCE:** Action: Equity: Statutory. An action for divorce where there has been a valid marriage is not an action in equity. Such actions were formerly within the jurisdiction of ecclesiastical courts; but having no such courts, jurisdiction in our courts is de-pendent upon the statute and the action may be said to be statu-tory.

5. **TENDER:** Pleading: Judgment. Where a tender is requisite, to maintaining a cause of action and none is pleaded, judgment may be rendered on the pleading.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

AFFIRMED.

*Frank Yalman, J. M. Johnson* and *J. D. Hill* for appellant.

*Paul R. Stinson* for respondent.

ELLISON, P. J.—Plaintiff and defendant were mar-ried in October, 1905, by common-law contract. Find-ing that they could not live together they, on the 5th of March, 1914, entered into an agreement of separation and settlement, wherein it was recited that as it was "impossible for them to continue to live together as man and wife," it was agreed therein they would separate, and that plaintiff would "accept the sum of five thousand dollars in full settlement of all property rights and dower interest in and to all sums of money and interests in any and all personal properties, real estate, stocks and bonds that may be due" from defendant to plain-tiff "by law or contract, is hereby settled in full."

On the 23rd of December, 1914, plaintiff filed the present action for divorce and alimony. Defendant made answer in which he pleaded the contract, claiming that he had complied therewith and that he was thereby released from any obligation for alimony. Plaintiff filed a reply

to such answer in which she charged that the contract was procured from her by fraud and duress and that she was therefore not bound by its terms; but she did not plead a return, or offer to return, what she received from defendant.

The trial court granted plaintiff a decree of divorce in which it allowed plaintiff three thousand dollars alimony and two hundred dollars attorney's fee, and refused to consider the contract aforesaid, on the ground that defendant had not properly pleaded it; and held that even if the contract were properly pleaded, it did not relieve defendant from his obligation to pay alimony.

Defendant acquiesed in the decree for divorce but appealed from the allowance of alimony and attorney's fee, on the ground that the contract should be considered and held to bar alimony. The case will be found reported in 195 Mo. App. 407.

We there held, in an opinion by BLAND, J., that considering that the reply to defendant's answer took issue on the contract and pleaded that it was procured by fraud and duress, it was not correct to say that it was out of the case as not being properly pleaded. It was further held, contrary to the view of the trial court, that if the contract had not been procured by fraud and duress, it was a bar to alimony. The judgment was therefore reversed and the cause remanded that the issue made on the procurement of the contract might be tried, and if found to have been fraudulently obtained, alimony was to be allowed, but if there had been no fraud or duress, then alimony was barred.

The case came on again in the trial court when defendant filed a motion for judgment on the pleadings; that is, for judgment against alimony and attorney's fee. The motion was sustained on the ground that plaintiff had not pleaded in the reply that she had returned, or offered to return, the five thousand dollars received under the contract she sought to repudiate for fraud. Plaintiff thereupon appealed to this court.

Plaintiff has assigned two principal grounds for reversal of the judgment. First: That this court in re-

versing the judgment and remanding the cause, ordered a new trial on the issue of fraud and duress in procuring the contract, and therefore the trial court had no other power or jurisdiction and should not have entertained defendant's motion for judgment further than to have overruled it.

Second: That if the contract was procured by defendant through fraud and duress, plaintiff was not required to tender back the sums received under the contract, for the reason that a ''fiduciary relationship'' existed between the parties. And that it is not necessary to tender back the amount received under a contract where the party committing the fraud owed the other party more than the amount which could be tendered. And that the rule requiring tender does not apply to equity cases, where the prayer offers to do equity, or submit to such orders as the court might make.

And, lastly, that the question of tender had nothing to do with attorney's fees, an issue said to be left in the case regardless of alimony.

It is true, as stated by plaintiff, that where an appellate court reverses a judgment and remands the cause, with specific directions, those directions must be complied with, and if such directions dispose of the case, that ends the matter in controversy. [Rees v. McDaniel, 131 Mo. 681.]

But we think the opinion on the hearing when the the case was here before does not give any directions. It is true that we referred to another trial on the question of fraud by merely assuming it would be necessary, in the state of the case as made by our opinion, to have another trial. But it was not intended, nor did we cut off any right which the defendant might have arising out of the state of the pleadings. Nothing of that nature was suggested.

Nor do we think that there was any such ''fiduciary'' relation existing between these parties at the date of the contract that would relieve either, in an action at law, of the performance of any duty which is requisite to the right to assert a cause of action. It was said by the

Court of Errors and Appeals of New Jersey in deciding a case involving an antenuptial contract that the "husband, by his will, devised to the trustee named in the marriage settlement, and for her benefit, the sum of $5000 provided in that instrument. Of that amount it was proved that the trustee has paid over to the appellant $500. This $500 she accepted from him, and still, retains. It is entirely settled that a party to a contract cannot, at one and the same time, repudiate it and retain a benefit·from its partial execution. In order to entitle him to rescind he must first restore what he has received under the contract, and thus put the other party to the agreement in his original position. [Trenton Passenger Railway Co. v. Wilson, 11 Dick. Ch. Rep. 783; Byard v. Holmes, 4 Vr. 119; Behring v. Somerville, 34 Vr. 572.] This the appellant has not done, and consequently does not stand in a position which entitles her to an annullment of the contract, even if it be true, as she alleges, that she was induced to enter into it by fraud on the part of her husband." [Russell v. Russell, 63 N. J. Eq. 282, 284.]

Nor do we think the rule which exempts one from the duty of tender where the party to whom the tender is to be made already owes the other more than the amount claimed should be tendered (Girard v. Wheel Co., 123 Mo. 358; Goodson v. Masonic Assn., 91 Mo. App. 339, 352; Kingman-Moore Implement Co. v. Ellis, 125 Mo. App. 692) has application to this case; since here it is not known that defendant owed plaintiff more alimony (an unliquidated sum) than she got on the contract of settlement.

The point made that this is a case in equity would more seriously affect the defendant than those we have referred to if we believed it belonged to that branch of jurisprudence. For it seems in a case in equity where the party offers to do equity and submit to, and perform, such orders as the court might make as a condition to the relief he seeks, he need not make a tender before, or along with the bringing of the action. [Whelan v. Reilley, 61 Mo. 565, 569; Paquin v. Milliken, 163 Mo.

79; Haydon v. Railroad, 222 Mo. 126.] In other words, in a law case, tender on the face of the case made, is a requisite to its maintenance; but in equity if relief is asked on any conditions which the court may prescribe, thus putting it in the power of the chancellor to restore the *status quo* entirely, or so as good conscience may require.

But, as intimated, an action for divorce is not action in equity. It is expressly so decided in Chapman v. Chapman, 269 Mo. 663; Mangles v. Mangles, 6 Mo. App. 481; therefore plaintiff's effort to avoid the law concerning the necessity of tender as a requisite to recession, on the ground that the action is in equity must fail.

Formerly actions for divorce were not classed as either law or equity actions. Supervision of the marriage relation (where there had been a valid marriage) was claimed and held to belong to the ecclesiastical courts. In England the ecclesiastical law was taken largely from the "Roman Canon Law," but not altogether, and it was therefore called the "Kings Ecclesiastical Law."

While we brought the ecclesiastical divorce law from England we did not establish such courts here, and therefore we were in the predicament of having a law without an appropriate court to enforce it, the law thereby remaining in abeyance until the Legislature conferred jurisdiction on certain of our courts (see Barson v. Le Barson, 35 Vt. 365; 1. Bishop on Marriage and Divorce, Secs. 128, 129). In this State it was conferred on our common-law courts as distinguished from the equity side of such courts. This jurisdiction authorized the courts to grant divorces for the causes recognized by the ecclesiastical courts in England, if not incompatible with our institutions, unless, of course, the statute conferring the jurisdiction (as in this State) itself named the causes. It also took along with it the defenses and the practice and proceedings of such courts, unless interfered with by the statute. [Chapman, v. Chapman, 269 Mo. supra, l. c. 668; 1 Bishop on

Marriage and Divorce, Secs. 128, 129; 2 Ib, sec. 801.] Our courts, by this means, being governed by the practise of the ecclesiastical courts, we are led to inquire whether it would be permissible in an action for divorce in the latter courts for the wife seeking alimony, to repudiate and rescind her contract accepting a sum of money in lieu of such alimony, without first refunding, or offering to refund the money?

We are not advised of any instance where, in such circumstances, it has been allowed. No case of that kind has been cited. To permit it would seem to be grossly unjust, and in the absence of a precedent supporting such action, we will refuse to take it. [Russell v. Russell, 63 N. J. Eq. 282, 284.]

It is worthy of remark that plaintiff in attempting to rescind the settlement without restoring the money she received, did so by way of reply under the provisions of section 1812, Revised Statutes 1909, which contemplates a legal proceeding and would seem to leave her without any right to invoke the equity rule now brought forward. Furthermore the reply contains no allegations or offer which would authorize the application of equity practice. While now, by her motion, asking for herself consideration in equity, she has avoided offering to do equity and thereby fails to come within the rule stated in the authorities cited.

It is finally insisted that suit money in the way of attorney's fees was an issue in the cause which should have prevented the court from sustaining the motion. What we have said as to alimony finds application to this branch of the case. Besides, the face of the contract shows that plaintiff had sufficient means to make an allowance of suit money unnecessary and improper. [Smith v. Smith, 129 Mo. App. 99, 104; Bender v. Bender, 190 Mo. App. 572.]

Plaintiff having received the benefit of her contract with defendant, having no right to repudiate it on the ground of fraud, without offering to refund, should have pleaded a tender in her reply, and not having done so, the trial court properly rendered judgment on the

pleadings. [Jarrett v. Morton, 44 Mo. 275; Althoff v. Transit Co., 204 Mo. 166, 170, 171; Wood v. Telephone Co., 223 Mo. 537, 563; Implement Co. v. Ellis, 125 Mo. App. 692, 696; Boehn v. American Patriots, 172 Mo. App. 104.]

The foregoing considerations result in affirming the judgment. All concur.